# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SONEET KAPILA,

    Plaintiff,

v.                                         Case No: 8:21-cv-2362-CEH

WARBURG PINCUS, LLC,
WARBURG PINCUS EQUITY FUND
IX, L.P. and ALLEN WISE,

    Defendants.
_____/

## **ORDER**

This matter comes before the Court on Defendant Allen Wise's Motion for Summary Judgment (Doc. 112). In the motion, Defendant requests summary judgment in his favor on the counts asserted against him in the Second Amended Complaint. Plaintiff filed a response in opposition (Doc. 120) and Allen Wise ("Wise") replied (Doc. 125). The Court heard argument on the motion on November 7, 2023. Upon due consideration of the parties' submissions, including deposition transcripts, affidavits, exhibits, argument of counsel, and for the reasons that follow, Defendant Allen Wise's Motion for Summary Judgment will be granted.

## I.    FACTS AND BACKGROUND[1]

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' Stipulation of Agreed Material Facts (Doc. 122). For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

### A. Stipulated Facts

Universal Health Care Group, Inc. ("Universal) was a managed-care health insurance company. Doc. 122 ¶ 3. Universal operated two entities regulated by the Florida Office of Insurance Regulation ("FOIR"): Universal Health Care, Inc. ("UHC"); and Universal Health Care Insurance Company ("UHCIC"). *Id.* ¶ 3. Dr. Akshay Desai, M.D., now deceased, was the founder, CEO, and majority owner of Universal. *Id.* ¶ 4.

Defendant Allen Wise ("Wise) formerly served as Chairman and Chief Executive Officer of Coventry Health Care Inc., a managed health care insurance company and health maintenance organization. Doc. 122 ¶ 1. Wise invested directly in Universal in 2006. *Id.* ¶ 2. Wise is a limited partner in Defendant Warburg Pincus Private Equity IX, LP ("WP IX"), which also invested in Universal. *Id.* ¶ 2.

A May 26, 2006, Securities Purchase Agreement (the "2006 SPA") provided that Wise would pay one million dollars in exchange for 384,271 shares of preferred stock in Universal. *Id.* ¶ 5. On August 17, 2006, Universal stockholders executed a Stockholders' Agreement ("SA") and Universal filed an Amended and Restated Certificate of Incorporation ("COI") with the State of Delaware. *Id.* ¶ 6. The COI provided Wise with the right to have Universal redeem its preferred stock after five years, at a price determined in the COI, subject to the terms of the COI and Delaware law. *Id.* ¶ 7. The COI also provided that Wise's investment was entitled to an annual 12% dividend, subject to the same terms and conditions. *Id.* The agreed

2

"Redemption Price" in the COI was $2.60233 per share plus accrued dividends, or approximately $1.8 million, subject to Delaware law. *Id.*

Wise initially served as a WP IX representative on Universal's Board of Directors. *Id.* ¶ 8. Wise resigned from Universal's Board on March 29, 2007. *Id.* ¶ 9. WP IX's other initial designated director Joel Akerman resigned from Universal's Board on March 31, 2007. *Id.* ¶ 10. In December 2008, WP IX named Alok Sanghvi to Universal's Board. *Id.* Sanghvi served on the Board until the February 2011 redemption transaction closed. *Id.*

Sanghvi negotiated the redemption of WP IX's and Wise's investment in Universal. Sandip Patel negotiated the redemption of WP IX's and Wise's investment on behalf of Universal. *Id.* ¶ 11. Sanghvi communicated with Patel toward the end of 2010 and through January 2011 concerning the proposed stock redemption. *Id.* Wise's shares were redeemed by Universal for $1.1 million. *Id.* ¶ 12.

The Feb. 7, 2011 Securities Purchase Agreement (the "2011 SPA") provided that Universal would redeem Wise's preferred stock for $1,113,333. *Id.* ¶ 13.

In the fall of 2012, FOIR conducted an audit of UHC's and UHCIC's then-filed 2012 third quarter statutory accounting reports. *Id.* ¶ 14. In early February 2013, FOIR petitioned to place Universal's regulated subsidiaries into receivership. *Id.* On February 6, 2013, Universal filed for protection under Chapter 11 of the Bankruptcy Code. *Id.* ¶ 15. On April 22, 2013, the Court appointed Plaintiff, Soneet Kapilla ("Plaintiff"), as Chapter 11 Trustee. *Id.*

### B. Claims Against Wise

On November 20, 2018, Plaintiff, as the Liquidating Agent and former Chapter 11 Trustee of the bankruptcy estate of Universal, filed a 20-count Complaint against Warburg Pincus, LLC (Warburg"), WP IX, and Wise to avoid the alleged actual and constructive fraudulent transfers under § 548 of the Bankruptcy Code and § 726 of the Florida Statutes (the Florida Uniform Fraudulent Transfer Act or "FUFTA"). Doc. 2-253. Plaintiff asserts the following claims against Wise in Counts seven through twelve: Avoidance of [actual] fraudulent transfer of property pursuant to 11 U.S.C. § 548(a)(1)(A) (Count VII); Avoidance of [constructive] fraudulent transfer of property pursuant to 11 U.S.C. § 548(a)(1)(B) (Count VIII); Avoidance of [actual] fraudulent transfer of property pursuant to 11 U.S.C. § 544 and § 726.105(1)(a), Fla. Stat. (Count IX); Avoidance of [constructive] fraudulent transfer of property pursuant to 11 U.S.C. § 544 and § 726.105(1)(b), Fla. Stat. (Count X); Avoidance of [constructive] fraudulent transfer of property pursuant to 11 U.S.C. § 544 and § 726.106(1), Fla. Stat. (Count XI); and Recovery of Avoided Transfer Pursuant to 11 U.S.C. § 550 (Count XII). The Bankruptcy Court denied Wise's motion to dismiss the Second Amended Complaint. Doc. 2-267. Wise answered the Second Amended Complaint on March 5, 2019, denying Plaintiff's claims and raising sixteen affirmative defenses. Doc. 2-276. The Fourteenth affirmative Defense states "Wise's investment in [Universal] is distinct from Warburg IX's investment and must be treated separately." *Id.* at 32.

### C. Wise's Investment

Wise's holdings in Universal constituted 3.3% of the preferred shares purchased by Wise and WP IX, with Wise's shares equaling approximately .27% interest in Universal's total outstanding shares. Doc. 112-4 at 40; Doc. 112-3 at 4. In connection with the stock purchase, Wise did not have the right to appoint members to Universal's Board of Directors, as WP IX did. Doc. 104-3 at 5–6. Wise was identified as a separate investor from WP IX. Doc. 112-4 at 6, 40. WP IX had rights under the stock purchase agreement that Wise did not have, such as rights of termination. *See, e.g., id.* at 33–34. Wise did not control the day-to-day operations of Universal. Doc. 112-3 at 5.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

### III. DISCUSSION

#### A. Wise's Investment Should Be Assessed Independently

Wise argues that his one-million-dollar investment must be assessed independently from WP IX's twenty-nine-million-dollar investment. In support, he points to the fact that the shares were not owned jointly, the 2006 SPA classified Wise as an "Other Investor" who did not have preferential rights as opposed to WP IX's "Institutional Investor" status, Wise could not designate members to Universal's board of directors, Wise did not have transfer rights that WP IX enjoyed as it related to the ability to transfer its shares, and Wise did not have rights such as first offer, tag-along rights, or special rights to purchase additional shares. Docs. 112 at 8; 125 at 4–6.

In opposition, Plaintiff submits the investment of Wise and WP IX must be analyzed as a single transaction. For this proposition, Plaintiff raises two arguments, neither of which are persuasive. First, Plaintiff relies on the Bankruptcy Court's denial of Wise's motion to dismiss in which that court found the Trustee had adequately alleged the redemption of Wise's preferred stock was an integral part of a single transaction. Doc. 120 at 4 (citing Doc. 2-80 at 17). Second, Plaintiff relies on the Bankruptcy Court's April 1, 2021 order denying his motion for partial summary judgment as to Wise's Fourteenth Affirmative Defense. *Id.* at 4 (citing Doc. 2-491 at 17–18)

Plaintiff's first argument is unavailing. A denial at the motion to dismiss stage does not foreclose a party from raising the argument at the summary judgment stage. *See Windham v. City of Fairhope*, 597 F. App'x 1068, 1073 n.7 (11th Cir. 2015) ("[Appellant's] assertion that the district court's order denying the defendants' motion to dismiss is somehow indicative of how it should rule on cross motions for summary judgment is meritless."); *Vintilla v. United States*, 931 F.2d 1444, 1447 (11th Cir. 1991) (holding that where district court's denial of the government's initial motion to dismiss was not a final judgment, the court was free to reconsider its ruling at the summary judgment stage). Indeed, in the May 6, 2016 order, the bankruptcy judge observed that resolution of the issue is "appropriately resolved after the issues have been framed and discovery taken." Doc. 2-80 at 17.

Plaintiff also relies on the bankruptcy court's denial of his summary judgment motion as to Wise's Fourteenth Affirmative Defense. The Defense states "Wise's

7

investment in [Debtor] is distinct from Warburg IX's investment and must be treated separately." On the record before it, the Bankruptcy Court determined that whether the Wise investment is distinct from Warburg IX's investment is a disputed fact for the fact finder. *See* Doc. 2-491 at 18. In its order, the Bankruptcy Court found questions of fact existed to preclude summary judgment on Wise's Fourteenth Affirmative Defense. In support of Plaintiff's position, the bankruptcy judge noted the language from the order on the motion to dismiss which found that Plaintiff adequately alleged that Wise's stock was an integral part of a single transaction, negotiated by Sanghvi, for the mutual benefit of WP IX and Wise. Second, the Bankruptcy Court cited to Wise's testimony that he was basically following along with Warburg and doing whatever they decided was going to happen. *See id.*; *see also* Doc. 2-393 at 5. On the other hand, from Defendants' perspective, the Bankruptcy Court referenced Defendants' arguments that expert testimony is required to distinguish the economic benefits to Debtor of the redemption of Wise's stock; that Universal's corporate records distinguish Wise's interest; that the Wells Fargo loan was taken to redeem WP IX's shares, not Wise's shares; and that the redemption of Wise's shares did not cause Universal's insolvency. Doc. 2-491 at 17–18 (citing Doc. 2-444 at 20–21). In opposing Plaintiff's motion, Defendants argued the motion was premature.

As discussed above, Plaintiff may not rely, at this stage of the proceedings, upon the Bankruptcy Court's 2016 ruling on a motion to dismiss in lieu of coming forward with evidence to refute that the investment transactions were separate. The

8

ruling on the motion to dismiss was that Plaintiff adequately *alleged* that Wise's stock was an integral part of a single transaction, negotiated by Sanghvi, for the mutual benefit of WP IX and Wise. We are way beyond the pleading stage and Plaintiff must now come forward with record evidence to support his allegations. *See LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("To defeat a motion for summary judgment, the nonmoving party may not rely on 'mere allegations.' It must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). Plaintiff fails to do so. Plaintiff points to no deposition testimony regarding the redemption of Wise's shares being an integral part of the transaction nor cites to any documents that support these allegations. In contrast, Wise cites to overwhelming record evidence demonstrating how the investments were separate. *See* Doc. 112 at 8; Doc. 125 at 4–6.

As for Wise's testimony that he was just going along with WP IX's plan, that testimony does not create a disputed issue of *material* fact where there is no evidence to indicate the Wells Fargo loan was obtained to fund the redemption of Wise's stock or that the redemption was contingent on Wise's stock being redeemed. The lender term sheets indicate the purpose of the loan is to redeem preferred shares held by Warburg Pincus. Doc. 112-14 at 2. Indeed, there is no evidence that Universal acquired any debt to redeem Wise's shares. *See* Doc. 112-21 at 3 (FOIR Consent Order issued January 5, 2011, acknowledges "the primary use of [the Wells Fargo] loan proceeds will be to repurchase the preferred stock held by Warburg Pincus."); Doc. 171-2 at 65 (Wells Fargo Loan Agreement identifying that the proceeds of the

9

extensions of credit are to be used by Universal solely to redeem preferred Capital Stock held by Warburg Pincus, to pay closing expenses, to pay costs and fees incurred with the redemption, and for working capital). Plaintiff fails to direct the Court to any record evidence that shows the Wells Fargo loan or any debt was obtained for purposes of redeeming Wise's shares.

Plaintiff presents no compelling evidence to support that Wise was not an independent investor.[2] Plaintiff's arguments to the contrary are belied by the fact that Plaintiff sued Wise individually, seeking an avoidance of the Wise stock redemption, and any recovery of an avoided transfer as against Wise would be for the $1.1 million redemption, not the combined $33.4 million. For his part, Wise has offered evidence which indicates: that he did not control the day-to-day operations of Universal; he has not been involved with Universal since March 29, 2007; he did not possess the same rights as an investor as WP IX did; he could not appoint a board member like WP IX could; he did not have the same protections as WP IX did; Wise and WP IX were distinct investors under the stock purchase agreement; representations in the 2011 redemption were made severally and jointly; and he was

---

[2] Plaintiff responds that Wise's undisputed facts are, in fact, disputed. Doc. 120 at 3. However, Plaintiff wholly fails to direct the Court to any facts in the record that contradict the statements Wise includes in his motion. As Defendant points out, the Court's Scheduling Order requires a party opposing summary judgment to "specify the material facts" to which the party contends is a genuine issue for trial and to provide pinpoint citations to the page and line of the record that supports the facts relied upon by that party. *See* Doc. 12 at 6–7. Plaintiff's blanket statement that Wise's undisputed facts are disputed is insufficient. Plaintiff must come forward with evidence from the record supporting his position that the material facts are in dispute, and he has failed to do so. *See Anderson*, 477 U.S. at 257 (to defeat summary judgment, a party must come forward with affirmative evidence to support its claim).

limited in his ability to transfer his shares, unlike WP IX. *See* Docs. 120 at 8, 125 at 4–6. On this record, Wise's investment is due to be analyzed independently.

B.  **Actual Fraud Claims**

Plaintiff sues Wise under state and federal law for avoidance of actual fraudulent transfers. Under 11 U.S.C. § 548(a)(1)(A) of the Bankruptcy Code, "[t]he trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . ." 11 U.S.C. § 548(a)(1)(A). Thus, to establish an actual fraudulent transfer claim under § 548(a)(1)(A) of the Bankruptcy Code and Fla. Stat. § 726.105(1)(a),[3] "the trustee must establish: (1) the debtor 'transferred an interest in property' within the relevant pre-petition time period, and (2) the debtor made such transfer with actual intent to hinder, delay, or defraud any creditor." *In re ATM Fin. Servs., LLC*, No. 6:08-BK-969-KSJ, 2011 WL 2580763, at *4 (Bankr. M.D. Fla. June 24, 2011) (citing *In re World Vision Ent., Inc.*, 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002)). The timing of the

---

[3] Fraudulent transfer claims under Florida statutes are analogous "in form and substance" to those under 11 U.S.C. § 548 and are frequently analyzed contemporaneously. *In re Able Body Temp. Servs., Inc.*, 626 B.R. 643, 656 (Bankr. M.D. Fla. 2020) (citing *In re Pearlman*, 515 B.R. 887, 894 (Bankr. M.D. Fla. 2014)). "The only material difference between the state and bankruptcy provisions is the favorable four-year look-back period under the Florida law." *In re Pearlman*, 515 B.R. at 894.

11

transfers is not in dispute as the stock redemption occurred within two years of Universal filing bankruptcy. However, on the second factor, "[g]iven the difficulties in establishing a transferor's actual intent, courts generally look at the totality of the circumstances and the badges of fraud surrounding the transfers." *In re World Vision Ent., Inc.*, 275 B.R. at 656; *see also In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir. 1998) (Actual intent to defraud creditors is ordinarily established by circumstantial evidence typically gathered by a court's consideration of certain badges of fraud.).

Considering the totality of the circumstances in a light most favorable to Plaintiff, the Court cannot identify any evidence which demonstrates that Universal's $1.1 million redemption in 2011 of Wise's preferred shares that were purchased for $1 million in 2006 was done with an actual intent to hinder, delay, or defraud any entity. Nor has Plaintiff identified record evidence of an actual intent related to the Wise redemption. In his response, Plaintiff instead argues that genuine issues of material fact exist because of the existence of at least five badges of fraud. Doc. 120 at 5. But, rather than identifying the badges of fraud, Plaintiff refers to his response in opposition to the summary judgment motion filed by Warburg and WP IX. Plaintiff's failure to cite to any legal authority or facts in the record, and merely to adopt its response to another motion, is insufficient.

Even considering the badges of fraud identified in Plaintiff's response to Warburg and WP IX's motion (*see* Doc. 119 at 19), however, the purported badges of fraud do not defeat Wise's motion. Specifically, Plaintiff cites to the fact that the

transfer was made to an "insider," WP IX; the transfer was substantially all of Universal's assets; the value of the consideration received by Universal was not reasonably equivalent to the $33.4 million transferred; Universal was insolvent or became insolvent shortly thereafter; and the transfer was made shortly after a substantial debt was incurred. *Id.* Critically, the "badges of fraud" relied upon relate to the total $33.4 million dollar redemption and do not attempt to separate or identify the impact, if any, of the $1.1 million redemption of Wise's stock. In fact, the language used in describing the badges of fraud— "substantially all of Universal's assets," "the $33.4 million transferred," and "substantial debt" —suggests the $1.1 million Wise redemption was not the issue. Plaintiff fails to offer evidence that any of these badges of fraud exist due to the $1.1 million redemption of Wise's $1 million investment. Because Plaintiff fails to present any record evidence supporting that the $1.1 million redemption of Wise's shares was done with an actual intent to hinder, delay, or defraud creditors, Plaintiff's claims for avoidance of actual fraudulent transfers as to Wise fail.

### C. Constructive Fraud Claims

Relevant to Plaintiff's constructive fraud claims, under 11 U.S.C. § 548(a)(1)(B), a trustee may avoid any transfer made within two years before the filing of a bankruptcy petition if the debtor;

> (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)   (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

13

   (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
   (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
   (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).[4]

Wise argues that Plaintiff's claims based on alleged constructive fraud fail because Universal received reasonably equivalent value, specifically a substantial benefit from the Wise redemption in the form of a 34% to 38% discount on the projected redemption price according to Dr. Henry Fishkind, Warburg's economic expert. Next, Wise argues that Universal was not rendered insolvent by the redemption. Wise relies on Defendants' expert Richard Gaudet, who analyzed Universal's finances before and after the redemption transactions for Wise and WP IX and opined that Universal could have paid Wise's redemption in cash, as well as every other debt out of its liquid assets with millions to spare. Doc. 112 at 14. Defendant's CPA expert Ian Ratner identifies and addresses the Wise redemption independently. Ratner opines that Universal's redemption of preferred stock held by Wise for $1.1 million was reasonable and would have no bearing, based on the size of the redemption, on Universal's solvency. Doc. 44 at 32. Plaintiff fails to proffer any evidence or testimony to rebut this opinion.

---

[4] Florida's constructive fraudulent transfer statutes, Fla. Stat. §§ 726.105(1)(b) and 726.106(1) are analogous to 11 U.S.C. § 548(a)(1)(B)(i) and (ii).

Again, Plaintiff's response to Wise's motion for summary judgment related to the constructive fraud claims is inadequate as Plaintiff does not cite any record evidence or legal authority in opposition to Wise's arguments and, instead, cites only to his response filed in opposition to the summary judgment motion filed by Warburg and WP IX. *See* Doc. 120 at 4–5.

The first issue for consideration on an avoidance of a constructive fraud claim is whether the redemption provided reasonably equivalent value. Reasonably equivalent value ("REV") is not specifically defined in the Bankruptcy Code. However, the Eleventh Circuit has repeatedly recognized that the purpose of the requirement is "to protect creditors against the depletion of a bankrupt's estate." *In re TOUSA, Inc.*, 680 F.3d 1298, 1311 (11th Cir. 2012) (citing *In re Rodriguez*, 895 F.2d 725, 727 (11th Cir. 1990)). Therefore, § 548(a)(1)(B) "does not authorize voiding a transfer which confers an economic benefit upon the debtor" because "the debtor's net worth will have been preserved, and the interests of the creditors will not have been injured by the transfer." *Rodriguez*, 895 F.2d at 727. Under § 548, the "trustee bears the burden of showing that a transfer was not for reasonably equivalent value." *In re Rodriguez*, 895 F.2d 725, 726 n.1 (11th Cir. 1990); *see also In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3rd Cir. 2006).

In his opposition to Warburg and WP IX's summary judgment motion, Plaintiff first argues that whether Universal received REV is a question of fact. Doc. 119 at 8. In support of denying Defendants' motion for summary judgment, Plaintiff cites to the Bankruptcy Court's conclusion that questions of fact existed on the issue.

15

*Id.* Plaintiff argued to the Bankruptcy Court, as he does here, that the 1935 decision of the Fifth Circuit Court of Appeals in *Robinson v. Wangemann*, 75 F.2d 756, 757 (5th Cir. 1935), stands for the principle that a corporation does not receive any net increase in value when it acquires its own stock from a stockholder. Accordingly, Plaintiff claims that Universal could not have received REV when it redeemed Defendants' stock. *Wangemann* is not dispositive of the issues here. First, the Wise stock redeemed here was preferred stock, unlike in *Wangemann*. *See, e.,g., In re Corp. Jet Aviation, Inc.*, 45 B.R. 629, 634 (Bankr. N.D. Ga. 1985) (distinguishing corporations who receive nothing of value for the benefit of creditors by redeeming stock to be held by the corporation as treasury stock as in *Wangemann* from a redemption used to fund preferred stocks, which "might survive the 'reasonably equivalent value' test"). Moreover, as discussed by Chief Bankruptcy Judge Delano, the stockholder in *Wangemann* did not receive cash for his stock at the time that he relinquished it, as the Defendants did in this case, and the debtor in *Wangemann* had been "adjudicated bankrupt" by the time that the payment for the redemption of its stock would have become due. *See* Doc. 2-490 at 15–16. In denying Plaintiff's motion for summary judgment on the issue of whether Defendants received REV, the Bankruptcy Court concluded issues of fact existed as to whether Universal was insolvent at the time of the stock redemption and whether Universal received indirect value as a result of the transfers. *See* Doc. 2-490 at 16.

Wise argues that Universal received REV from the Wise redemption, pointing to the fact that the early redemption resulted in a $700,000 discount from the

contractually-agreed redemption rate. "By its terms and applications, the concept of 'reasonably equivalent value' does not demand a precise dollar-for-dollar exchange." *Advanced Telecomm. Network, Inc. v. Allen* (*In re Advanced Telecomm. Network, Inc*.), 490 F.3d 1325, 1336 (11th Cir. 2007) (citation omitted). And economic benefit to the debtor, either direct or indirect, can constitute "reasonably equivalent value" for alleged constructively fraudulent transfer. *Id.* The Trustee may not avoid a transfer if the transfer conferred an economic benefit upon the debtor, either directly or indirectly. *Id.* (citing *Gen. Elec. Credit Corp. of Tenn. v. Murphy* (*In re Rodriguez*), 895 F.2d 725 (11th Cir. 1990)). Plaintiff does not respond to Wise's argument that Universal received REV other than to rely on the Bankruptcy Court's prior orders. But the prior bankruptcy orders did not distinguish between the Wise redemption and the redemption of Warburg and WP IX stock. Having determined above that the Wise transaction should be analyzed independently, the Court looks to Plaintiff to come forward with evidence to refute Wise's evidence that Universal received REV from the Wise redemption. Plaintiff fails to do so.

As to the issue of insolvency, although *Wangemann* is not dispositive of the REV issue here, *Wangemann* counsels that insolvency is to be considered as part of the REV analysis. Wise submits that Plaintiff never actually claims Universal was rendered insolvent by the redemption of Wise's preferred shares for $1.1 million. Doc. 112 at 23. The Court agrees. In his response, again, Plaintiff has only

17

incorporated his arguments as it relates to Warburg and WP IX.[5] Doc. 120 at 4. In general, under the Bankruptcy Code, insolvency means "a financial condition such that the sum of such entity's debts is greater than all of such entity's property." 11 U.S.C. § 101(32). No fact or expert witness has offered testimony that the Wise redemption resulted in Universal's insolvency as defined under the Bankruptcy Code. And the one expert to address the Wise redemption independently, CPA Ratner, opined the $1.1 million redemption of Wise's stock would have no bearing on Universal's solvency.

In sum, Plaintiff does not direct the Court to any evidence supporting that the $1.1 million Wise redemption rendered Universal insolvent. Because Plaintiff fails to show disputed issues of material fact exist as to Universal's receipt of REV from the Wise redemption, Wise is entitled to summary judgment on Plaintiff's claims for avoidance of constructively fraudulent transfers under 11 U.S.C. § 548(a)(1)(B), and Florida's statutory counterparts.

### D. Recovery of Fraudulent Transfer

A trustee may recover property that was fraudulently transferred under sections 544 or 548 from the initial transferee of such transfer or the entity for whose benefit the transfer was made. *See* 11 U.S.C. § 550. Given the conclusion above that there were no actual or constructively fraudulent transfers as it relates to the Wise

---

[5] And in his response to Warburg and WP IX's motion for summary judgment, Plaintiff's arguments against a finding of REV address the Warburg and WP IX redemption, not the Wise redemption. *See* Doc. 119 at 9. Plaintiff cites to the opinions of his expert Stuart Cohn to challenge the opinions of Dr. Fishkind regarding REV, but nothing in Cohn's opinions suggest that the $1.1 million Wise redemption rendered Universal insolvent.

stock redemption, the Plaintiff may not obtain recovery from Wise under section 550.

## IV. CONCLUSION

Because no genuine issues of material fact exist, Allen Wise is entitled to summary judgment as to Plaintiff's actual fraudulent transfer claims (Counts VII and IX) and constructively fraudulent transfer claims (Counts VIII, X, XI) under state and federal law. And because Plaintiff is unable to avoid the transfer to Wise as a fraudulent transfer, Plaintiff's claim for recovery under § 550 fails as well. Accordingly, it is

**ORDERED AND ADJUDGED**:

1. Defendant Allen Wise's Motion for Summary Judgment (Doc. 112) is **GRANTED**.

2. A Judgment in favor of Defendant Allen Wise and against Plaintiff Soneet Kapila will be entered at the conclusion of this litigation.

**DONE AND ORDERED** in Tampa, Florida on March 28, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any